UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA MARTINEZ, individually and on behalf of all others similarly situated,<br><br>                                    Plaintiffs,<br><br>v.<br><br>PUBLIC CONSULTING GROUP, INC.; and DOES 1 through 20, inclusive,<br><br>                                    Defendants. | Case No.:  22-cv-00813-WQH-DDL<br><br>**ORDER** |

HAYES, Judge:

The matter before the Court is the Motion to Remand Action to State Court filed by Plaintiff Lisa Martinez. (ECF No. 5.)

## I.      BACKGROUND

On April 1, 2022, Plaintiff Lisa Martinez ("Plaintiff") filed a Class Action Complaint against Defendant Public Consulting Group, Inc. ("PCG") in the Superior Court for the State of California, County of San Diego, assigned Case No. 37-2022-00012198-CU-OE-CTL. (Ex. A to Amended Notice of Removal, ECF No. 3-1 at 5.) In the Complaint, Plaintiff alleges that Defendant PCG violated California's wage and hour laws with respect to non-exempt employees at Defendant PCG's California business locations.

Plaintiff alleges that "Plaintiff and Class Members were entitled to receive wages for all time worked (including minimum wages and overtime wages) and that they were

not receiving all wages earned for work that was required to be performed." *Id.* ¶ 29. Plaintiff alleges she and the Class Members were not paid "all wages … for all hours worked at the correct rate and within the correct time." *Id.* Plaintiff alleges she and the Class Members were entitled to receive all meal and rest periods or compensation for missed meal or rest periods. *Id.* ¶¶ 30–31. Plaintiff alleges she and the Class Members did not receive all meal or rest periods and did not receive compensation for those missed meal or rest periods. *Id.*

Plaintiff alleges she and the Class Members "were entitled to reimbursement and/or indemnification for all necessary business expenditures or losses as a direct result of the discharge of their duties, or of their obedience to the directions of Defendants." *Id.* ¶ 32. Plaintiff alleges they did not receive reimbursement or indemnification for such expenses or losses. *Id.*

Plaintiff alleges Plaintiff and the Class Members "were entitled to receive itemized wage statements that accurately showed" gross wages earned, employee's total hours worked, piece-rate units earned and the applicable rate if earned, all deductions, net wages earned, inclusive dates of the period for which the employee is paid, employee's name and last four digits of their social security number or employee identification number, employer's name and address, and all applicable hourly rates in effect during the pay period and the corresponding number of hours the employee worked at each hourly rate. *Id.* ¶ 33. Plaintiff alleges they were not provided accurate itemized wage statements. *Id.*

Plaintiff alleges "the Waiting Time Subclass was entitled to timely payment of wages due upon separation of employment" and they "did not receive payment of all wages within the permissible time periods." *Id.* ¶ 34.

Plaintiff alleges "Defendants knew or should have known they had a duty to compensate Plaintiff and Class Members, and Defendants had the financial ability to pay such compensation but willfully, knowingly, and intentionally failed to do so in order to increase Defendants' profits." *Id.* ¶ 35.

Plaintiff seeks to represent the following class:

> All California citizens currently or formerly employed by Defendants as non-exempt employees in the State of California any time between October 5, 2017 and the date of class certification.

*Id.* ¶ 20. Plaintiff seeks to represent the following subclass:

> All members of the Class who separated their employment with Defendant at any time between October 5, 2018 and the date of class certification ("Waiting Time Subclass").

*Id.* ¶ 21 (footnote omitted).

Plaintiff and the Class Members[1] bring the following claims against Defendants: (1) failure to pay minimum wages in violation of California Labor Code sections 1194, 1194.2, and 1197 and Industrial Welfare Commission ("IWC") Wage Order § 3-4; (2) failure to pay overtime in violation of California Labor Code sections 510, 1194, and 1198 and IWC Wage Order § 3; (3) failure to provide meal periods in violation of California Labor Code sections 226.7 and 512 and IWC Wage Order § 11; (4) failure to permit rest breaks in violation of California Labor Code section 226.7 and IWC Wage Order § 12; (5) failure to reimburse business expenses in violation of California Labor Code sections 2800 and 2802; (6) failure to provide accurate itemized wage statements in violation of California Labor Code section 226; (7) failure to timely pay during employment in violation of California Labor Code sections 204 and 210; and (8) unfair business practices in violation of California Business and Professions Code sections 17200, *et seq. Id.* ¶¶ 44–106. Plaintiff and the Waiting Time Subclass bring one claim against Defendants for failure to pay all wages due upon separation of employment in violation of California Labor Code sections 201, 202, and 203. *Id.* ¶¶ 90–96. Plaintiff and the Class Members seek recovery of compensatory damages, unpaid compensation, economic and/or

---

[1] Class and Waiting Time Subclass members will be collectively referred to as "Class Members." (ECF No. 3-1 ¶ 23.)

special damages, liquidated damages, statutory penalties, restitution, injunctive relief, pre-judgment interest, and attorneys' fees and costs. *Id.*, Prayer for Relief.

On June 2, 2022, Defendant PCG removed the action to this Court pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). (ECF No. 1.) On June 3, 2022, Defendant PCG filed a Corrected Notice of Removal. ("Notice of Removal," ECF No. 3.) In the Notice of Removal, Defendant PCG alleges that there are at least 100 class members, the parties are minimally diverse, and the amount in controversy exceeds $5,000,000. *Id.* at 4. Defendant PCG alleges that the amount in controversy is at least $5,288,293. *Id.* at 15. Defendant PCG calculates the amount in controversy based on the its records, cited cases, and the following assumptions: (1) that there was at least one hour of unpaid overtime averaging $30.30 per putative class member per week for 25,090 total workweeks, totaling $760,227; (2) that each class member worked at least 25,090 total workweeks at an average hourly rate of $20.20 with four hours of premium pay per week, totaling $2,027,272; (3) that Defendant PCG employed 320 non-exempt employees from October 5, 2017 until May 9, 2022 for 25,090 total workweeks and each had $10 of unreimbursed business expenses per week, totaling $250,900; (4) that Defendant PCG employed 220 non-exempt employees in California between April 1, 2021 and April 1, 2022 who were employed for 4,421 pay periods based on a bi-weekly pay cycle with wage statement violations every week at $50 for the first violation and $100 for subsequent violations, totaling $431,100; (5) that at least 157 class member employees were terminated between October 5, 2018, and May 9, 2022, with a standard pay of $20.20 per hour for eight hours per day for 30 days, totaling $761,136; and (6) attorneys fees of 25% of the claims' sum ($4,230,635), totaling $1,057,658. *Id.* ¶¶ 25–44. Defendant PCG does not include potential liability for failure to pay minimum wages or failure to timely pay during employment in calculating the amount in controversy.

On June 24, 2022, Plaintiff filed a Motion to Remand Action to State Court. (ECF No. 5.) Plaintiff asserts that Defendant based its removal on "wholly unsupported assumption of violation rates to reach the amount in controversy." *Id.* at 3.

On June 28, 2022, Plaintiff filed an Amended Complaint.[2] (ECF No. 6.) In the Amended Complaint, Plaintiff alleges the same claims against Defendants as the original Complaint.

On July 25, 2022, Defendant filed a Response in opposition to the Motion to Remand. (ECF No. 11.) On August 1, 2022, Plaintiff filed a Reply. (ECF No. 12.)

## II.   LEGAL STANDARD

"Under 28 U.S.C. § 1441, a defendant may remove an action filed in state court to federal court if the federal court would have original subject matter jurisdiction over the action." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1243 (9th Cir. 2009). "CAFA gives federal courts jurisdiction over certain class actions, defined in § 1332(d)(1), if the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 84–85 (2014) (quoting 28 U.S.C. § 1332(d)(2), (5)(B)). "A defendant seeking removal must file in the district court a notice of removal 'containing a short and plain statement of the grounds for removal.'" *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (quoting 28 U.S.C. § 1446(a)). "In determining the amount in controversy, courts first look to the complaint." *Id.* "If the plaintiff's complaint, filed in state court,

---

[2] For the purposes of the ruling on the Motion to Remand, the Court only considers the original Complaint. Generally, "whether remand is proper must be ascertained on the basis of the pleadings at the time of removal." *Broadway Grill, Inc. v. Visa Inc.*, 856 F.3d 1274, 1277 (9th Cir. 2017). However, the Court of Appeals for the Ninth Circuit established an exception in *Benko v. Quality Loan Serv. Corp.*, 789 F.3d 1111, 1117 (9th Cir. 2015), for amendment of a complaint "after removal to clarify issues pertaining to federal jurisdiction under CAFA." *Id.* The court has since limited the exception to those circumstances "where the 'plaintiffs can provide a federal court with the information' that amendments that could potentially affect jurisdiction were allowed," for example, specific CAFA-specific information that a state court complaint is unlikely to address. *Broadway Grill*, 856 F.3d at 1277. The present Amended Complaint does not appear to provide the Court with information that would clarify issues relating to jurisdiction. In any event, Defendant PCG does not rely on the Amended Complaint in its amount in controversy analysis in either its Notice of Removal or its Response in opposition, and Plaintiff does not reference the Amended Complaint in her Motion. Further, the crux of this case is whether Defendant PCG has satisfied its burden, *see infra* Part III, and Defendant PCG only references the original Complaint. The Court need not consider the Amended Complaint and only looks to the original Complaint in ruling on the Motion to Remand.

demands monetary relief of a stated sum, that sum, asserted in good faith, is 'deemed to be the amount in controversy.'" *Dart Cherokee*, 574 U.S. at 84 (quoting 28 U.S.C. § 1446(c)(2)). "When the plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal may do so." *Id.* (citing 28 U.S.C. § 1446(c)(2)(A)). When the plaintiff's complaint does not include an amount in controversy or other sum specific allegation, "a removing defendant need only allege in its notice of removal that the amount in controversy requirement is met." *Harris v. KM Indus., Inc.*, 980 F.3d 694, 699 (9th Cir. 2020); *see also Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 397 (9th Cir. 2010) (providing that a removing defendant need only show "that the potential damages could exceed the jurisdictional amount").

"Thereafter, the plaintiff can contest the amount in controversy by making either a 'facial' or 'factual' attack on the defendant's jurisdictional allegations." *Harris*, 980 F.3d at 699. "A 'facial' attack accepts the truth of the [defendant's] allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'" *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035 (9th Cir. 2004)). For a facial attack, the court, in accepting the truth of the defendant's allegations and drawing all reasonable inferences in the defendant's favor, "determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Id.* (citing *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013)).

In contrast, a factual attack "contests the truth of the [defendant's] factual allegations." *Id.* (citing *Safe Air for Everyone*, 373 F.3d at 1039). When a plaintiff brings a factual attack, "the burden is on the defendant to show by preponderance of the evidence, that the amount in controversy exceeds the $5 million jurisdictional threshold." *Harris*, 980 F.3d at 699 (citing *Ibarra*, 775 F.3d at 1197); *see also Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020) ("When a factual attack is mounted, the responding party 'must support her jurisdictional allegations with competent proof' … under the same evidentiary standard that governs in the summary judgment context." (quoting *Leite*, 749 F.3d at 1121)). Both parties are permitted to "submit evidence supporting the amount in

controversy before the district court rules." *Harris*, 980 F.3d at 699 (first citing *Salter*, 974 F.3d at 963; and then citing *Ibarra*, 775 F.3d at 1197). "The parties may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Ibarra*, 775 F.3d at 1197 (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)).

## III.   AMOUNT IN CONTROVERSY

In this case, the amount in controversy is not apparent from the face of the Complaint. Plaintiff challenges Defendant PCG's assertion that the amount in controversy exceeds $5,000,000. Both parties had "the opportunity to place evidence on the record supporting their respective positions as to the amount in controversy." *Harris*, 980 F.3d at 702. Neither party submitted evidence.

Defendant PCG contends that in her Motion to Remand, "Plaintiff offered no declaration, submitted zero evidence, and made no factual challenges to the basis of [Defendant] PCG's allegations or reasonable assumptions asserted in its Notice of Removal." (ECF No. 11 at 10.) Defendant PCG contends that "Plaintiff merely concludes … that [Defendant] PCG's Notice of Removal was defective because it was based on underlying assumptions 'without providing evidence of any kind to substantiate its theory.'" *Id.* (quoting ECF No. 5). Defendant PCG reasons that amount in controversy assumptions in a notice of removal will always just be assumptions. *Id.* Defendant contends that "Plaintiff does not challenge the *accuracy* of the information PCG provided" and thus she brings a facial attack on the form rather than the substance of Defendant PCG's amount in controversy showing. *Id.* (emphasis in original).

Plaintiff contends she "made a factual attack by challenging the assumptions underlying Defendant's assertion that the amount in controversy exceeds $5 million." (ECF No. 12 at 7.) Plaintiff contends she "sufficiently disputed the factual basis of Defendant's 100% violation rate assumptions" and mounted a factual attack. *Id.*

Plaintiff directly challenged the truth of Defendant PCG's allegations that "every class member suffered every violation for all of Plaintiff's claims at all times." (ECF No. 5 at 5.) Specifically, Plaintiff challenges Defendant PCG's underlying assumptions "100% of class members were subject to wage and hour violations on 100% of workweeks." *Id.* at 6. As to attorneys' fees, Plaintiff contends that Defendant PCG's estimate of attorneys' fees must be disregarded because attorneys' fees can only be considered when they are statutorily authorized for a successful litigant. (ECF No. 5 at 5.) Plaintiff's challenges are grounded on her assertion that Defendant PCG's calculations are based on assumptions that Defendant PCG did not support with allegations in the Complaint or outside evidence. *Id.*

In *Harris v. KM Industrial, Inc.*, the Ninth Circuit considered the form of the plaintiff's attack when the plaintiff "directly challenged the truth of KMI's allegation that all 442 Hourly Employee Class members worked shifts long enough to qualify for meal and rest periods." *Harris*, 980 F.3d at 699. The court determined that the plaintiff's motion to remand claimed that the defendant "unreasonably 'assumed every type of injury in the complaint was suffered by each [class member].'" *Id.* The plaintiff in *Harris* did not introduce any evidence outside the pleadings. *Id.* The court noted that "[a] factual attack, however, need only challenge the truth of the defendant's jurisdictional allegations by making a reasoned argument as to why any assumptions on which they are based are not supported by evidence." *Id.* The plaintiff had thus "sufficiently disputed the factual basis of KMI's assumption that all Hourly Employee Class members had suffered one meal and two rest period violations per workweek across 39,834 workweeks by attacking the assumption's factual underpinnings" and had raised a factual attack. *Id.* at 699–701.

Plaintiff contests Defendant PCG's assumptions, whereby it assumed certain violation rates and number of class members when making its calculations, and challenges the factual underpinnings to which Defendant PCG's assumptions are based. (*See* ECF No. 5 at 6.) Plaintiff "contests the truth of [Defendant PCG's] factual allegations." *Salter*, 974 F.3d at 964. Plaintiff sufficiently made "a reasoned argument as to why any assumptions

on which [Defendant PCG's allegations] are based are not supported by evidence." *Harris*, 980 F.3d at 699. Plaintiff in this case did not present any evidence supporting her assertion, but presentation of such evidence is not necessary so long as the truth of the defendant's allegations are sufficiently challenged. *Id.* The Court finds Plaintiff's Motion to Remand raises a factual challenge to Defendant PCG's assumptions. Because Plaintiff brought a factual challenge, the burden shifted to Defendant PCG to support its "jurisdictional allegations with competent proof." *Salter*, 974 F.3d at 963. A removing defendant must "prove that the amount in controversy (including attorneys' fees) exceeds the jurisdictional threshold by a preponderance of the evidence," and the defendant must "make this showing with summary-judgment-type evidence." *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 795 (9th Cir. 2018) (citations omitted).

Defendant PCG "has the burden of proving by a preponderance of the evidence that its assumptions were reasonable." *Harris*, 980 F.3d at 701. "A defendant may rely on reasonable assumptions to prove it has met the statutory threshold" and "need not make the plaintiff's case for it or prove the amount in controversy beyond a legal certainty," but it "cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Id.* "Under this system, CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Ibarra*, 775 F.3d at 1198. "[T]hose assumptions cannot be pulled from thin air but need some reasonable ground underlying them." *Id.* at 1199. The court should then "weigh the reasonableness of the removing party's assumptions, not supply further assumptions of its own." *Harris*, 980 F.3d at 701.

Defendant PCG's amount in controversy estimates are based on six of Plaintiff's alleged claims: (1) overtime wage violations; (2) meal and rest break violations; (3) unreimbursed business expenses violations; (4) wage statement violations; and (5) waiting time penalties violations.

22-cv-00813-WQH-DDL

## A.    Claims Calculations

In its Notice of Removal, Defendant PCG proffers the following calculations:

- <u>Overtime Claim</u>: 25,090 total workweeks x $30.30 (average hourly rate of $20.20 x 1.5) x 1 overtime hour per week = $ 760,227;

- <u>Meal and Rest Break Claims</u>: 25,090 total pay periods x 4 hours of premium pay per week x average hourly rate of $20.20 = $2,070,272;

- <u>Waiting Time Penalty Claim</u>: average hourly rate of $20.20 x 8 hours per day x 30 days x 157 employees = $761,136;

- <u>Wage Statement Claim</u>: $50 for initial pay period and $100 for subsequent 4,201 penalty pay periods = $431,100;[3]

- <u>Unreimbursed Business Expenses Claim</u>: $10 unreimbursed business expenses per week x 25,090 workweeks = $250,900; and

- <u>Attorneys' Fees</u>: 25% x total claimed ($4,230,635) = $1,057,658.

(ECF No. 3 at 9–15.) These are Defendant PCG's calculations underly its total claimed amount-in-controversy of $5,288,293. *Id.* at 15.

In her Motion to Remand, Plaintiff challenges Defendant PCG's assumptions that

(1) every single class member experienced one hour of unpaid overtime *every* week without any evidence; (2) every single class member experienced *two* meal period and *two* rest period violations *every* week without providing any evidence as to whether all class members worked sufficient hours to qualify for meal and rest periods every week; (3) every single class member incurred unreimbursed business expenses *every week* without any evidence; (4) every single wage statement provided in the liability period is inaccurate without any evidence; (5) every single terminated employee is owed maximum

---

[3] Under California Labor Code section 226(e), an employer owes "fifty ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000)." Cal. Lab. Code § 226(e). Beyond these statutory values, the Court notes that Defendant PCG's calculations in the Notice of Removal as to this claim are unclear. (ECF No. 3 at 13.) Defendant PCG's Response in opposition is also unclear and does not provide a mathematical breakdown of the wage statement claim calculations. (ECF No. 11 at 16–17.)

waiting time penalties without putting forward any evidence that all terminated employees worked full time.

*Id.* at 6 (emphasis in original).

Defendant PCG responds by providing the same calculations it did in its Notice of Removal, and adds some case citations[4] to support its assumptions of "one hour of unpaid overtime per class member per week," a 40% violation rate for the meal and rest period claims, a 100% violation rate for the waiting time claim, a 100% violation rate for the wage statement claim, and $10 per week in unreimbursed business expenses. (ECF No. 11 at 12–18.) However, Defendant PCG fails to provide any evidence to support these assumptions.[5] Plaintiff does not allege any violation rates in the Complaint and Defendant PCG fails to provide evidence or an explanation of factual allegations in the Complaint to prove its calculations are based on more than speculation.

Defendant PCG further assumes 100% of the class members suffered each violation in the Complaint without providing any evidence to support its assumption, and it does not sufficiently explain how this assumption can be reached based on Plaintiff's allegations in

---

[4] The Court finds these case citations unpersuasive as the defendants in those cases submitted some level of evidence—e.g., declarations—to support the defendants' assumptions. *See, e.g., Kastler v. Oh My Green, Inc.*, No. 19-cv-02411-HSG, 2019 WL 5536198, at *4 (N.D. Cal. Oct. 25, 2019) (acknowledging evidence the defendant put forth in the form of a senior human resources official declaration that provided estimates of, for example, proposed class members, number of full-time hourly employees average number of days worked, and average hourly rate); *Vasquez v. Randstad US, L.P.*, No. 17-cv-04342-EMC, 2018 WL 327451, at *2 (N.D. Cal. Jan. 9, 2018) (explaining that a declaration attached to defendants' opposition provided "estimates for various categories of damages based on information about the number of class members employed during the class period, the number of class members terminated during that time, and their average hourly wage"); *Lopez v. Aerotek, Inc.*, No. SACV 14-00803-(CJGx), 2015 WL 2342558, at *2 (C.D. Cal. May 14, 2015); *Sanchez v. Russell Sigler, Inc.*, No. CV 15-01350-AB (PLAx), 2015 WL 12765359 at *3 (C.D. Cal. Apr. 28, 2015); *Oda v. Gucci Am., Inc.*, Nos. 2:14-cv-7468-SVW (JPRx) & 2:14-cv-07469-SVW (JPRx), 2015 WL 93335, at *3 (C.D. Cal. Jan. 7, 2015); *Branch v. PM Realty Grp., L.P.*, 647 Fed. App'x 743, 744–45 (9th Cir. 2016).

[5] In its Notice of Removal, Defendant PCG references its "records" to reach the conclusion that between the relevant dates, "putative class members have worked at least 25,090 workweeks at an average hourly rate of $20.20." (ECF No. 3 at 11–14.) Defendant PCG does not provide the Court with any evidence to show or explain that its records contain this information.

the Complaint. This assumption is overly broad—Plaintiff makes no allegation regarding the number of class members that suffered each violation. Defendant PCG also makes assumptions concerning the $20.20 hourly rate, the 25,090 total workweeks, number of non-exempt employees who suffered each violation, and number of class member employees terminated during the time period. Defendant PCG has provided no basis concerning its use of $20.20 as the average hourly rate, which is significantly higher than California's statutory minimum wage. Likewise, Defendant PCG does not support its assumptions that there was a violation every week for every class member. Defendant PCG has not provided evidence to establish the number of non-exempt employees during the time period, the number of terminated employees during the time period, and that the total number of workweeks is 25,090. Based upon the record before the Court, Defendant PCG's values seem to be generated "from thin air." *Ibarra*, 775 F.3d at 1198.

Given Defendant PCG's lack of evidentiary support, the Court finds Defendant PCG's assumptions relating to the overtime, meal and rest periods, unreimbursed business expenses, wage statements, and waiting time claims are not reasonably grounded. *See Harris*, 980 F.3d at 701 ("[The defendant] has failed to provide *any* evidence to support its assumption that all 442 Hourly Employee Class members were the same as the members of the Meal Period Sub-Class or the Rest Period Sub-Class or that they all worked shifts long enough to qualify for meal or rest periods."); *Fritsch*, 899 F.3d at 795 (providing that defendants are required to show the amount in controversy exceeds the jurisdictional threshold with summary judgment type evidence); *see also Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 994 (9th Cir. 2022) ("Of course, if a defendant provided *no* evidence or clearly inadequate evidence supporting its valuation for a claim, then it might be appropriate for a district court to assign that claim a $0 value.").

## B. Attorneys' Fees

In its Notice of Removal, Defendant PCG includes attorneys' fees in its amount in controversy calculations. It uses an amount of 25% of $4,230,625, which is the sum of Defendant PCG's estimate of the overtime wages, meal and rest breaks, waiting time, wage

statement, and unreimbursed business expenses claims. (ECF No. 3 at 15.) Defendant PCG contends a 25% potential fee award is reasonable because "[c]ourts in the Ninth Circuit 'have treated a potential 25% fee award as reasonable' in wage and hour class actions removed under CAFA." *Id.* at 15 (citing *Anderson v. Starbucks Corp.*, 556 F. Supp. 3d 1132, 1138 (N.D. Cal. 2020)); *see also* ECF No. 11 at 18.

Plaintiff challenges Defendant PCG's inclusion of attorneys' fees in its calculations, providing that "in determining the amount in controversy with respect to a federal court's jurisdiction, the amount of attorneys' fees can be considered only where 'a statute authorizes fees to a successful litigation.'" (ECF No. 5 at 7 (citing *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155 (9th Cir. 1998).) Plaintiff further contends that courts have held meal and rest period premiums "do not entitle a successful litigant to attorneys' fees," and courts have held similarly as to waiting time penalties. *Id.*; *see also* ECF No. 12 at 9.

The Ninth Circuit has rejected the argument that "the amount of attorneys' fees in controversy in class actions is [per se] 25 percent of all other alleged recovery." *Fritsch*, 899 F.3d at 796 & n.6 ("We do not hold that a percentage-based method is never relevant when estimating the amount of attorneys' fees included in the amount in controversy, only that a per se rule is inappropriate…. [W]e leave the calculation of the amount of the attorneys' fees at stake to the district court."). "[T]he defendant must prove the amount of attorneys' fees at stake by a preponderance of the evidence; [a court] may not relieve the defendant of its evidentiary burden by adopting a per se rule for one element of the amount at stake in the underlying litigation." *Id.* In considering the defendant's proof that the amount in controversy exceeds the jurisdictional minimum, the court "may reject the defendant's attempts to include future attorneys' fees in the controversy if the defendant fails to satisfy [their] burden." *Id.* at 795. The district court may use its knowledge of customary rates, experience concerning proper and reasonable fees, and expertise in determining the sum of hours reasonably spent on litigation multiplied by a reasonable hourly rate. *Id.* at 795–96.

In the present case, Plaintiff demanded in her Complaint attorneys' fees permitted by California law. (ECF No. 3-1 ¶¶ 42, 55, 79, 84, 89.) "Because the law entitles [Plaintiff] to an award of attorneys' fees if [s]he is successful, such future attorneys' fees are at stake in the litigation, and must be included in the amount in controversy." *Fritsch*, 899 F.3d at 794. Despite Plaintiff's concerns about entitlement to recover attorneys' fees for waiting time penalties and meal and rest periods claims, Plaintiff still demanded attorneys' fees for other claims. Notably, Plaintiff demanded attorneys' fees for the minimum wage, wage statements, overtime wages, and business expenses claims, which permit recovery of attorneys' fees under certain circumstances. Some of these claims are also ones included in Defendant PCG's amount in controversy calculations. The Court does not, and cannot, disregard Defendant PCG's inclusion of attorneys' fees in its calculation as attorneys' fees are at stake in this case. *Fritsch*, 899 F.3d at 794. Rather, the Court turns to whether Defendant PCG has sufficiently met its burden to prove the amount of attorneys' fees at stake by a preponderance of the evidence.

Defendant PCG includes in its attorneys' fees calculation all claims for which it calculated potential damages—claims two, three, four, five, six, and eight—to be included in the amount in controversy. However, not all of those claims entitle a successful plaintiff to attorneys' fees. *See Fritsch*, 899 F.3d at 796 ("[A] court's calculation of future attorneys' fees is limited by the applicable contractual or statutory requirements that allow fee-shifting in the first place."); *Kriby v. Immoos Fire Prot., Inc.*, 274 P.3d 1160, 1166 (Cal. 2012) (providing that the California Labor Code sections 218.5 and 1194 fee shifting provisions do not apply to legal work regarding meal and rest period claims).

Defendant PCG's calculation of attorneys' fees is also speculative because Defendant PCG has failed to show the base amount, to which the 25% has been applied, is founded on reasonable assumptions. As discussed in the previous section of this Order, the values of the other claims are not reasonably grounded in evidence despite Plaintiff's factual challenge. Regardless of whether a percentage is used to calculate prospective

attorneys' fees, the Court cannot reasonably calculate the attorneys' fees value without a reasonable basis for the value.

Moreover, Defendant PCG fails to meet its burden to show that 25% of recovery for attorneys' fees is a reasonable estimate. Defendant PCG "fails to present any evidence to establish how the proposed 25% attorneys' fees calculation for the instant case is reasonable." *Avila v. Rue21, Inc.*, 432 F. Supp. 3d 1175, 1193 (E.D. Cal. 2020); *see also Fritsch*, 899 F.3d at 795 ("A district court may reject the defendant's attempts to include future attorneys' fees in the amount in controversy if the defendant fails to satisfy this burden of proof."). The case may be that a lower percentage in attorneys' fees is reasonable, but Defendant PCG has not presented any evidence to establish why use of 25% recovery for attorneys' fees is appropriate in this case. Instead, Defendant PCG simply requests the Court adopt a 25% benchmark for attorneys' fees. Defendant PCG has not met its burden to add such an amount to the amount in controversy calculation. *See Fritsch*, 899 F.3d at 796. For these reasons, the Court cannot find attorneys' fees of $1,057,658.

Given that Defendant PCG has provided no evidence or factual basis to support its assumptions, Defendant PCG has failed to demonstrate by preponderance of the evidence that the amount in controversy exceeds $5,000,000.

## IV.    CONCLUSION

IT IS HEREBY ORDERED that the Motion to Remand Action to State Court (ECF No. 5) is granted. This case is remanded to the Superior Court for the State of California, County of San Diego, where it was originally filed as Case No. 37-2022-00012198-CU-OE-CTL.

Dated:  October 13, 2022

*William Q. Hayes*
Hon. William Q. Hayes
United States District Court

22-cv-00813-WQH-DDL